UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH W. GREEN, JR.,

**DECISION AND ORDER**

        Petitioner,        **No. 08-CV-0089T**

   -vs-

JOHN B. LEMPKE

        Respondent.

_____

## I.   Introduction

*Pro se* petitioner Joseph W. Green, Jr. ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered March 22, 2005, in New York State, County Court, Livingston County, convicting him, after a jury trial, of one count of Burglary in the Second Degree (N.Y. Penal Law ("Penal Law") § 140.25 [2]) and three counts of Forcible Touching (Penal Law § 130.52).  Petitioner was sentenced to a determinate prison term of eight years with five years post-release supervision on the burglary count and three concurrent one-year jail sentences on the forcible touching counts.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

### A. Introduction

On the afternoon of July 7, 2004, Petitioner entered the home of L.B.[1] without her permission.  Once inside, Petitioner expressed his sexual desire for her, touched her breasts, put his hands between her legs, grabbed her hand and tried to make her touch his penis.  L.B. pulled away from Petitioner, and Petitioner then proceeded to sit down on L.B.'s couch.  The encounter was interrupted when a neighbor entered L.B.'s house.  After Petitioner left, L.B. reported the incident to her neighbor.  Petitioner was subsequently arrested.

By Livingston County Indictment No. 2004-226, Petitioner was charged with one count of Burglary in the Second Degree (Penal Law § 140.25 [2]) and three counts of Sexual Abuse in the First Degree (Penal Law § 130.65 [1]).

### B.  The Trial

On February 14, 2005, a jury trial was held before the Hon. Ronald A. Cicoria.

#### 1.  The People's Case

At approximately 3:00 p.m. on July 7, 2004, Amanda Worden ("Worden") and her neighbor, L.B., went to a grocery store.  While L.B. was inside the store, Worden saw Petitioner in the parking lot and, Petitioner, who knew Worden, asked her for a ride to a

---

[1]     The victim's name is withheld from this Decision and Order.

doctor's office.  Worden agreed to take him.  Trial Trans. [T.T.]
19-22, 32.  Worden first drove home, dropping L.B. off at her
trailer so that L.B. could put away her groceries.  T.T. 23, 33.
Petitioner went inside Worden's home, where he asked Worden if L.B.
had a boyfriend.  Worden told Petitioner that L.B.'s boyfriend was
in prison, and Petitioner then left Worden's home.  T.T. 23.

While L.B. was putting away her groceries inside her trailer,
she heard the sliding door of her trailer open.  She turned toward
the door and saw Petitioner standing inside her trailer.  T.T. 35,
42.  Petitioner asked L.B. when she had last had sex.  L.B. asked
Petitioner why he was asking her, and Petitioner stated that since
her fiancé was in prison, he would not find out.  L.B. told
Petitioner that she would not cheat on her fiancé.  T.T. 36.
Petitioner then touched L.B.'s breasts and put his hands between
her legs.  He also grabbed L.B.'s hand and tried to put it on his
penis.  T.T. 36-37, 42, 47.  L.B. pulled her hand away from
Petitioner, afraid he would rape and kill her.  T.T. 38.
Petitioner eventually moved away from L.B., sat on her couch, and
invited her to join him.  L.B. refused.  T.T. 39.

At that point, Worden, who was nervous because of her earlier
conversation with Petitioner, went to L.B.'s house.  When Worden
entered the house, Petitioner put his hands up and said, "I'm not
doing anything."  T.T. 24, 39.  L.B. appeared nervous and she and
Worden walked out of the trailer together.  Worden's husband,

Victor, then took Petitioner to the doctor's office. T.T. 25, 40, 54. L.B., who was crying and upset, told Worden what had happened. T.T. 26, 40. Worden then called her husband and told him not to bring Petitioner back to her house. T.T. 26. As Victor drove Petitioner home, Petitioner told Victor that he wanted to go back to L.B.'s house to "get a blow job." T.T. 56.

Police Officer Kimberly Moran met with L.B. and interviewed her. T.T. 59-60. Officer Moran then met with Petitioner at the police station and advised him of his <u>Miranda</u> rights. T.T. 61, 63. Petitioner subsequently denied touching L.B. T.T. 65-66.

### 2. The Defense's Case

Petitioner presented no evidence at trial, and did not testify at trial.

### 3. Verdict and Sentence

On February 15, 2005, the jury found Petitioner guilty of Burglary in the Second Degree. The jury acquitted him of the three counts of Sexual Abuse in the First Degree, but convicted him of the three lesser-included counts of Forcible Touching. T.T. 130. On March 22, 2005, Petitioner was sentenced to a determinate prison term of eights years with five years post-release supervision on the burglary count and three concurrent one-year jail sentences on the forcible touching counts. Sentencing Mins. [S.M.] 8.

-4-

### D.   Petitioner's Direct Appeal

Petitioner appealed his conviction on the following grounds: (1) his sentence was punishment for exercising his right to trial; (2) his second-degree burglary conviction was not supported by legally sufficient evidence and was against the weight of the evidence; and (3) the trial court's jury instructions were confusing and erroneous. See Resp't Ex. A.

On December 22, 2006, the Appellate Division, Fourth Department ("Fourth Department") unanimously affirmed the judgment of conviction. People v. Green, 35 A.D.3d 1211 (4th Dep't 2004) (Resp't Ex. C); lv. denied, 8 N.Y.3d 985 (2007) (Resp't Ex. F).

### E.   The Coram Nobis Application

On or about February 1, 2007, Petitioner filed a *pro se* motion for a writ of error coram nobis claiming that he received ineffective assistance of appellate counsel. See Resp't Ex. G. That motion was summarily denied by the Fourth Department on April 20, 2007. People v. Green, 39 N.Y.3d 1285 (4th Dep't 2007) (Resp't Ex. J). Petitioner failed to seek leave to appeal the denial of his motion.[2]

---

[2]     Petitioner concedes that he did not seek leave to appeal the denial of his motion for a writ of error coram nobis. See Traverse at 3. He attributes his failure to do so "to C.P.L. § 450.90 instructions to file in either Court, and since the New York State of Appeals only excepts 'question of law' [Petitioner] felt it was exhausted." Id.

**F.    The Habeas Corpus Petition**

This habeas corpus petition followed, wherein Petitioner seeks relief on the same grounds he raised on direct appeal and on the ground that he received ineffective assistance of appellate counsel. See Pet. ¶ 22A-D (Dkt. # 1); Traverse [T.V.] (Dkt. # 15).

## III. General Principles Applicable to Habeas Review

**A.    The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not

*dicta*) of the Supreme Court existing at the time of the relevant state-court decision. <u>Williams</u>, 529 U.S. at 412; <u>accord</u> <u>Sevencan v. Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>id.</u> at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing

-7-

the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

### B. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (<em>en banc</em>), <u>cert. denied</u>, 464 U.S. 1048 (1984).

### C. The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 729 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). A

habeas corpus petitioner, however, may overcome a procedural default created by the state court's invocation of an "independent and adequate" basis for its decision by (1) showing cause for the default and prejudice attributable thereto, or (2) by demonstrating that a fundamental miscarriage of justice will ensue if the claim is not reviewed by the habeas court. See Harris, 489 U.S. at 262 (citing cases). The "fundamental miscarriage of justice" exception requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted. See id. It bears noting that "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

## IV. Petitioner's Claims

### 1. Petitioner's Claim that the Sentence Imposed Improperly Penalized him for Exercising his Right to a Jury Trial is Procedurally Barred by an Adequate and Independent State Ground

Petitioner claims, as he did on direct appeal, that he was punished for exercising his right to a jury trial. To support this contention, Petitioner points to the fact that the prosecutor sought to negotiate a plea bargain in which Petitioner would have received a three and one-half year prison sentence had he pled guilty to first-degree sexual abuse, which was a lesser sentence than the one he received after his trial. See Pet. at 8. The Fourth Department rejected Petitioner's claim on procedural grounds

for failure to properly preserve the issue for appellate review.[3]
See Green, 35 A.D.3d at 1211.  Consequently, this claim is
procedurally barred by an adequate and independent state law
ground.

A federal court may not review a question of federal law
decided by a state court if the state court's decision rested on a
state law ground, whether substantive or procedural, that is
independent of the federal question and adequate to support the
judgment.  See Coleman, 501 U.S. at 729.  Here, the state court
relied on New York's preservation rule (codified at N.Y. Crim.
Proc. L. ("CPL") § 470.05(2)) to deny Petitioner's claim because
the issue had not been properly preserved for appellate review.
The Second Circuit has determined that C.P.L. § 470.05(2) is an
independent and adequate state procedural ground.  See Garcia v.
Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999);  Velasquez v. Leonardo,
898 F.2d at 9;  see also Kanani v. Phillips, 03 Civ. 2534 (PKC)
(AJP), 2004 U.S. Dist. LEXIS 20444, *75-84 (S.D.N.Y. Oct. 13, 2004)
(finding that Appellate Division's holding that Petitioner failed
to preserve a claim of vindictive sentencing barred claim from
federal habeas review).  The Fourth Department's reliance on New
York's preservation rule is an adequate and independent state
ground which precludes this Court's review of Petitioner's claim.

---

[3]     In the alternative, the Fourth Department rejected this claim on
the merits, holding that "the sentence was not the product of vindictiveness."
Green, 35 A.D.3d at 1211.

This Court may reach the merits of Petitioner's claim, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice. See Coleman, 501 U.S. at 750. Petitioner does not attempt to avail himself of the "fundamental miscarriage of justice" exception. He does, however, allege trial counsel's failure to object to this issue as cause for the procedural default. A claim of ineffective assistance of counsel may establish cause for a procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); McCleskey v. Zant, 499 U.S. 467, 494 (1991); United States v. Frady, 456 U.S. 152, 168 (1982). However, a claim of ineffective assistance of counsel may not be used, as here, to establish cause for the procedural default when it has not been raised as an independent claim in the state courts. Murray v. Carrier, 477 U.S. 478, 488-90 (1986); see e.g., Ross v. Burge, 03 Civ. 3867, 2008 U.S. Dist. LEXIS 20141, *20-22 (S.D.N.Y. March 21, 2008) (finding Petitioner's ineffective assistance of trial counsel claim cannot serve as cause for a procedural default because it was never presented to the state court as an independent claim). Thus, Petitioner is unable to overcome the procedural default, which precludes this Court's review of his claim.

Accordingly, Petitioner's claim is dismissed as procedurally defaulted.

**2.    Petitioner's Claim that the Jury Instructions were Confusing and Erroneous is Procedurally Barred by an Adequate and Independent State Ground, and, in any event, Meritless**

Petitioner claims, as he did on direct appeal, that the trial court's confusing and erroneous jury instructions denied him his right to a fair trial.  In particular, he claims that in charging the jury on the burglary count, the court unfairly marshaled evidence by telling the jury that the building (the trailer) which Petitioner entered was a dwelling.[4]  Petitioner further argues that the court's instruction on the sexual abuse charge was confusing to the jury.  See Pet. at 10.  The Fourth Department rejected this claim on procedural grounds for failure to properly preserve the issue for appellate review.  See Green, 35 A.D.3d at 1212.  Consequently, for the same reasons stated at "Section IV, 1" above, this claim is procedurally barred from review by this Court by an adequate and independent state law ground.

Again, Petitioner relies on counsel's failure to preserve this claim as cause for the default.  As discussed above, however, Petitioner is precluded from relying on such because he failed to raise ineffective assistance of trial counsel as an independent

---

[4]    The relevant portion of the trial court's charge on this issue is as follows:  "The first count, burglary in the second degree.  Now, in this case there is no controversy that it is a dwelling.  Obviously, the defendant is contesting that he intended to commit any crime, but there is no real controversy that this place is a dwelling.  I will give you the meaning of certain terms.  Building, dwelling -- again, that's a given -- unlawfully, knowingly, and intent."  T.T. 93-94.

claim in the state courts. Accordingly, Petitioner's claim is dismissed as procedurally defaulted.

In any event, this claim is meritless. It is well-settled that the propriety of a state trial court's jury instructions is ordinarily a matter of state law that does not raise a federal constitutional question. See Cupp v. Naughten, 414 U.S. 141, 146 (1973); United States ex. rel Smith v. Montayne, 505 F.2d 1355, 1359 (2d Cir. 1975). A state prisoner seeking habeas relief based upon a claimed improper jury instruction faces a substantial burden. See DelValle v. Armstrong, 306 F.3d 1197, 1200-01 (2d Cir. 2002) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Even if a jury instruction is improper under state law, federal habeas relief is not available unless the charge also violated Petitioner's federal constitutional rights. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). Thus, to be entitled to habeas relief, a petitioner must show more than that "the instruction is undesirable, erroneous or even universally condemned," but rather, that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 146-47. Moreover, a "'single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" Middleton v. McNeil, 541 U.S. 433, 437 (2004) (quoting Cupp, 414 U.S. at 147).

Under New York law, the statutory term "dwelling," as it pertains to Petitioner's burglary charge, is defined as "a building which is usually occupied by a person lodging therein at night." Penal Law § 140.00 [3]. As that term applies in this case, the building that Petitioner was charged with burglarizing was L.B.'s trailer park home. L.B. testified that she lived in a trailer for one and one-half years. T.T. 30. There was no evidence presented at trial that challenged the truthfulness of that testimony or in any way contested that the trailer was a dwelling. In fact, the record reflects that, during her summation, Petitioner's attorney conceded, "[o]bviously, a trailer is a dwelling." T.T. 77. Thus, contrary to Petitioner's assertion, the trial court did not "invade the province of the jury" when the trial court properly instructed the jury that the element of whether the trailer constituted a dwelling was not at issue. T.T. 93.

Moreover, Petitioner's claim that the trial court gave confusing instructions on the elements of the third degree sexual abuse charge also provides no basis for habeas relief. In charging the jury, the trial court first instructed the jury to consider the first-degree sexual abuse charges, and, if it found Petitioner not guilty, to consider the lesser-included offense of forcible touching. T.T. 99-101. After explaining the elements of the forcible touching charge, the court told the jury that only if it acquitted Petitioner of the forcible touching charges was it to

consider the charge of third-degree sexual abuse.  T.T. 101-103.
In defining the elements of the sexual abuse charge, the court
mistakenly included the element of forcible compulsion (which is an
element in the first degree sexual abuse charge, but not the third
degree sexual abuse charge).  T.T. 104-105; see Penal Law §§ 130.65
[1], 130.55.  However, the record reflects that the prosecutor
immediately brought the mistake to the court's attention and a
conference was conducted with both attorneys outside the presence
of the jury.  Thereafter, in the presence of the jury, the court
corrected the error, told the jury of its mistake, and then
delivered a corrected charge.  T.T. 105-113.  After the jury began
its deliberations, it requested supplemental instructions on all of
the charges.  When the court instructed the jury on the sexual
abuse charges, it again told the jury, "if you find [Petitioner]
not guilty of sexual abuse first or the forcible touching, then you
may go to the sexual abuse in the third degree."  T.T. 127.  The
court went on to provide the correct instructions on that charge.

Petitioner's argument that the third-degree sexual abuse
charge was confusing fails.  First, the record reflects that the
court corrected its initial error by giving the jury a corrected
statement of the law.  And, when the jury requested supplemental
instructions, the court again recited the proper elements of the
charge.  Notably, Petitioner does not take issue with the substance
of the corrected version of the instructions.  The jury is presumed

to have followed the court's instructions, including the corrected version of those instructions. See Zafiro v. United States, 506 U.S. 534, 540-41 (1993). Second, Petitioner cannot have been prejudiced by the instruction because the jury did not deliberate on the third-degree sexual abuse count. The court twice told the jury that it was not to consider the third-degree sexual abuse charge unless it first acquitted Petitioner of the forcible touching charges. T.T. 103, 127. Since the jury convicted Petitioner of the forcible touching counts, it never considered the charges of third-degree sexual abuse. Thus, even if Petitioner's claim was not procedurally defaulted, he would still not be entitled to habeas relief on this issue.

**3.    Petitioner's Claim that the Verdict was Against the Weight of the Evidence is Not Cognizable on Habeas Review and his Claim that the Evidence was Legally Insufficient to Support his Burglary Conviction is Meritless**

Petitioner argues, as he did on direct appeal, that: (1) the jury's verdict was against the weight of the evidence;[5] and (2) the

---

[5]    This portion of Petitioner's claim is dismissed on the basis that it is not cognizable on federal habeas review. Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against the weight of the evidence derives from CPL § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." CPL § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

evidence was legally insufficient to support his second-degree burglary conviction insomuch as the People failed to prove beyond a reasonable doubt that he intended to commit a crime when he unlawfully entered L.B.'s home.  See Pet. at 9.  The Fourth Department rejected the weight of the evidence portion of Petitioner's claim on the merits, but did not specifically address the sufficiency portion of his claim.  See Green, 35 A.D.3d at 1212.  Because it is unclear whether the state court adjudicated the sufficiency issue on the merits, the Court will review it *de novo*.  See Torres v. Berbary, 340 F.3d 63, 68 (2d Cir. 2003).

The Supreme Court has stated in Jackson v. Virginia, 443 U.S. 307 (1979), that a habeas petitioner "bears a very heavy burden" when challenging the legal sufficiency of his state criminal conviction, Einaugler v. Supreme Court of the State of New York, 109 F.3d 836, 840 (2d Cir. 1997) (quoting Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)), and a habeas court is required to consider the trial evidence in the light most favorable to the prosecution and uphold the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319.

Further, a habeas court must defer to the credibility of the witnesses that were made by the fact-finder at trial, and may not substitute its view of the evidence for that of the fact-finder.  Id.; Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).  Thus,

-17-

under this "rigorous standard," a "federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994), cert. denied, 514 U.S. 1066 (1995) (quoting Jackson, 443 U.S. at 326).

In considering whether a state conviction was supported by legally sufficient evidence "[a] federal court must look to state law to determine the elements of the crime." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), cert. denied, 528 U.S. 1170 (2000)). Under New York State law, a person is guilty of Burglary in the Second Degree when "he knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling." Penal Law § 140.25 [2].

Here, Petitioner does not contest that he unlawfully entered L.B.'s home. L.B. testified Petitioner entered her home without her permission, and her testimony was unchallenged. Nor does Petitioner deny that when he was inside L.B.'s home, he committed the crime of forcible touching by grabbing her breasts, placing his hands between her legs, and trying to place her hands on his penis for the purpose of his own sexual gratification and without L.B.'s consent. See Penal Law § 130.52.

Petitioner argues, in particular, that the evidence was legally insufficient to establish that he intended to commit a crime at the time that he unlawfully entered L.B.'s home. Under New York law, it is well-established that a defendant's intent to commit a crime can be inferred from his conduct and from the circumstances of his entry. See People v. Orange, 251 A.D.2d 238 (1st Dep't 1998) (evidence of intent to commit a crime supported by the "circumstances of the entry"). To prove a defendant's intent to commit a crime, the People need only allege and establish a general intent to commit a crime, not an intent to commit a specific crime. See People v. Mackey, 49 N.Y.2d 274 (1980). Here, there was sufficient evidence to establish that Petitioner entered L.B.'s trailer home with the intent to commit a crime. The proof at trial established the following: that Petitioner and L.B. were complete strangers to each other prior to the date of incident; that, upon learning that L.B.'s boyfriend was in prison, Petitioner went to L.B.'s home uninvited; that Petitioner did not seek L.B.'s permission to enter her home; that Petitioner did not knock or otherwise let her know that he was seeking entry; that L.B. discovered Petitioner's presence only after hearing the sliding door of her trailer home move and seeing him standing in her home; that when L.B. attempted to discourage Petitioner's sexual overtures by telling him that she would not cheat on her fiancé, Petitioner grabbed her breasts, put his hands between her legs

without her consent, and tried to put her hand on his penis; that, although L.B. backed away from Petitioner and pulled her hand away, Petitioner later expressed to Worden's husband that he wanted to return to L.B.'s house for a "blow job."  T.T. 23, 35-38, 40, 42, 47.  Thus, a reasonable jury could have concluded that Petitioner unlawfully entered L.B.'s home with the intent to impose his sexual will upon her without her consent.

Accordingly, Petitioner's claim is meritless and provides no basis for habeas relief.  The claim is therefore dismissed.

## 4.  Petitioner's Ineffective Assistance of Appellate Counsel Claim is Unexhausted But Meritless

Petitioner argues that he was denied the effective assistance of appellate counsel because his appellate attorney failed to argue in his brief on direct appeal that Petitioner's trial counsel was ineffective based on trial counsel's failure to object to the court's jury instructions.  See Pet. at 11.  Petitioner raised this claim in his coram nobis application, which was summarily denied by the Fourth Department.  See Green, 39 N.Y.3d at 1285.  Petitioner, however, failed to seek leave to the appeal the denial of his motion for a writ of error coram nobis.  Consequently, the claim is unexhausted for purposes of federal habeas review.  Nonetheless, the Court dismisses this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).[6]

---

[6]     The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the "patently frivolous" test for dismissing such claims.

As discussed above at "Section IV, 2" above, Petitioner's challenge to the trial court's jury instructions is meritless. As such, it would have been futile for trial counsel to have objected to the jury instructions, thereby preserving the issue for appellate review. Since an ineffective assistance of trial counsel claim based on a failure to challenge the jury's instructions would have been meritless, appellate counsel cannot be faulted for failing to raise that non-meritorious issue on direct appeal. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance.")

Accordingly, Petitioner's claim is meritless and provides no basis for habeas relief. The claim is dismissed.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of

---

See, e.g., Love v. Kuhlman, No. 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572 (S.D.N.Y. Dec. 12, 2001); Cruz v. Artuz, No. 97 Civ. 2508, 2002 U.S. Dist. LEXIS 11150 (E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02 Civ. 0399, 2008 U.S. Dist. LEXIS 24616 (N.D.N.Y. Mar. 26, 2008); Hammock v. Walker, 224 F. Supp. 2d 544 (W.D.N.Y. 2002). A minority of courts in this Circuit have denied such petitions when they do not raise even a colorable federal claim. See Hernandez v. Lord, No. 00 Civ. 2306, 2000 U.S. Dist. LEXIS 10228 (S.D.N.Y. July 21, 2000) (discussing cases applying this standard) (internal quotation marks omitted). Under either of these standards, Petitioner's claim is meritless.

appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     January 20, 2011
           Rochester, New York